The first case on today's docket is cause number 21-10449 in the matter of Highland Capital Management versus, well, how about NexPoint Advisors and lots of others versus Highland Capital Management. Is the appellant ready to proceed? Yes, sir. Is the appellee Good morning, and may it please the Court. My name is David Fine. I represent the four appellants who were collectively referred to in the bankruptcy court and in the briefs in this court as the funds. I'm joined at council table by my co-counsel, Lee Hogwood, and Emily Mather. Your Honor, may I reserve five minutes for rebuttal? Noted. Thank you, Your Honor. This is a direct appeal from a bankruptcy court. The bankruptcy code and this court's precedents limit a bankruptcy court's jurisdiction and authority to exculpate third parties who are non-debtors or to serve as gatekeepers for claims between or among those non-debtor third parties. Here, the bankruptcy judge exceeded those limits because she perceived this case to be factually extraordinary. Most particularly, the bankruptcy judge believed that Mr. Dundaro is a vexatious litigant who might imperil the success of the plan, and she believed that a number of parties were acting under Mr. Dundaro's control. In response, she approved significantly overbroad exculpation and for how long. In doing so, the bankruptcy judge erred both factually and legally. My clients, whose interests are threatened by these discrete provisions, are neither controlled by Mr. Dundaro nor themselves inappropriately litigious, and the bankruptcy judge's contrary findings have no record support. And in any event, whatever the underlying facts, neither the bankruptcy code nor this court's precedents permit the nonconsensual protections those provisions afford to non-debtor third parties. Counsel, it would help me with respect to the Pacific lumber argument, which I take it as a legal argument that the exculpation provisions and some of the other provisions exceeded what our court said the bankruptcy code allows in terms of an exculpation. It would help me if you would concede, if you can concede, which parties in the exculpation provisions are properly exculpated under Pacific lumber, because I want to get at which are the ones where the parties disagree. Your Honor, I appreciate that. The exculpated parties, certainly the debtor is fairly exculpated. The committee, under Pacific lumber, because Pacific lumber focused on Section 1103 and said that the committee can be. Beyond that, Your Honor, I think that all of them are questionable, some more questionable than others. Okay. So when I look at, for example, I'm looking at the United States trustees' objections, I'm looking at, you know, subpart one is the debtor and others. Those might be okay under Pacific lumber, but then when we get to employees, your argument is that's not okay under Pacific lumber to exculpate. That's correct, Your Honor, and if I could, on that first one that you mentioned, and I presume that you're quoting from the plan itself, Romanet 1. Yeah. It says the debtor and its successors and assigns, and that already gets you into trouble because that's going to include, for example, of greatest importance to my clients are certain executory contracts for the management of these portfolios for the collateralized loan obligations. Those were assigned by the debtor, assumed by the reorganized debtor, and so by definition under this plan, the reorganized debtor in performing its functions under those contracts would, in fact, be exculpated. Okay. I understand. I guess my last question on this point is independent directors, okay or not okay under Pacific lumber in review? Your Honor, I think that's a somewhat closer call, but it probably falls on the not okay side. Okay. Why is it a closer call? It's a closer call because some have suggested that the independent directors here were acting in a function similar to a trustee. Okay. Which would be okay? Because they were appointed. I'm sorry, Your Honor. So a trustee would be okay under our precedence to exculpate? A trustee would be okay under your precedence and as well under the Barton Doctrine. Right. Okay. So I'm sorry. Go ahead. Why is it a close question? Because maybe they're like trustees maybe. Maybe they're like a trustee. I think it still falls on the line that it's not okay, but if you're looking at it as sort of a spectrum, that's a little closer to the middle of the spectrum. I thought that was a closer question. Than the far side. Thank you. Certainly. And I just want to be sure because I had the same concern, so I just want to be sure we're correctly included. Yes. You said the debtor, the committee. The debtor, the committee. Is that the end of your list? That is the end of the list that I would suggest are clearly protected because for each of those parties, there's something in the code that very clearly gives, shall we say, permission for it. There's a hook in the code. So the debtor obviously is protected because the committee, this court held in Pacific Lumber, is immune under section 1103. So those are appropriate hooks given this court's authority. The rest of them, not so much. I'd like to turn, if I might briefly, to a factual question. And obviously it's not common for an appellate to stand up here and tell you that a factual finding was wrong. But even with the deferential standard of review, the bankruptcy judge erred when she found that the funds are controlled by Mr. Dondero. Because if you look at each of the sources of evidence that she relied on, as well as what the appellee points to in its brief, the most that you can conclude from that is that Mr. Dondero, as a portfolio manager, as an employee of the advisors, has control over certain investment decisions for the collateralized loan obligations. That does not mean, and there is no evidence in this record, that he has or will have control over litigation determinations or other business determinations that could in any sense imperil the success of the plan. So those factual findings are simply without support in the record of this case. If we agreed with you on that point, what does it get you in terms of this appeal? Your Honor, it gets me a couple of things. One is that the bankruptcy judge seemed to be willing to exceed what this court has permitted by way of exculpation and the gatekeeping. You're referring to the bankruptcy judge saying, I'm extending Pacific Lumber? Yes, Your Honor. And she did that because she thought, well, my goodness, in her understanding, Mr. Dondero is a vexatious litigant who will cause all kinds of trouble. But my clients aren't Mr. Dondero. There's no evidence that they've been vexatious litigants or that they're controlled by him. So that's, at the start, an important point. Is your argument on the 524e point dependent on this factual point that you're making here? It's sort of a belt and suspenders kind of thing? It is belt and suspenders, Your Honor, because as I was alluding to in my opening, even if my clients were controlled by Mr. Dondero, they're not, but even if they were, even if they had been vexatious litigants, a bankruptcy court has limited authority, it has limited jurisdiction under both the Bankruptcy Code and the Constitution to implement provisions such as the bankruptcy judge implemented here. And she could not do this no matter what the underlying facts. Has the Ninth Circuit gone a different way from us on this point? It has. In Blixith, the Ninth Circuit noted in a footnote that it was departing from what this court did in Pacific Lumber. So it understood that it was at odds with this court's authority. But I would also submit, Your Honor, that Blixith is also different from this case because of an area that's particularly important to the funds. And that is Blixith was focusing on exculpation for conduct that occurred during the bankruptcy proceeding. Our greatest concern is what happens afterward, not what happened during. So it's a distinguishable case. I see. I see. Are there any other circuits that have weighed in on this particular point about the scope of 524E? Your Honor, I am unaware of any court that has approved provisions as broad as what the bankruptcy judge approved in this case. So this would be first impression. To the best of my knowledge, and I've been reading case after case, as you might imagine, for quite some time. Now, my opponent suggests that this case is somehow distinguishable from Pacific Lumber. And I'd like to address the ways in which my opponent says that. And actually, before I do that, I want to give one more response, Judge Duncan, to a question that you posed. You said, how is it important to my clients if the court agrees that Mr. D'Andaro did not control the funds? And there's another way. Because my opponent says that res judicata applies because of two orders in 2020, and therefore, our objections are barred by res judicata. And one of the responses to that is, my clients weren't in the case then. They didn't get notice of the motions. They didn't participate in the proceedings that led to those orders. My opponent doesn't argue that point. Instead, what they say is, well, but Mr. D'Andaro was there, and that's enough. But the case law says that he had to be sufficiently identified with the party, meaning my clients, that he was functionally their representative in these proceedings. And there's simply no evidence of that. And that ties in as well, Judge Duncan, to the point that you were asking me about earlier regarding the separation between my clients and Mr. D'Andaro. Let me return, if I might, to the points that my opponent has made. They say, well, 524E doesn't even apply here, because that affects things prior to plan confirmation. First, I'm not sure that that's correct. The Code section doesn't say that. But it also doesn't matter, because my opponent spent a great deal of time telling the Court what sections do not apply. But they don't point the Court to a section that properly applies and authorizes the bankruptcy judge to do what she did here. The bankruptcy judge can't just say, this seems like a good idea. There has to be a foothold somewhere in the bankruptcy code. And my opponent says, well, look at section 105A. And that's the provision that says that the bankruptcy judge can do things under equity to implement the plan. The problem with that is that this Court has held on a number of occasions, most recently in 2020 in a Brown case, that 105 is simply a provision that allows a court to use equity to implement other provisions of the Code. And it says specifically in that case, and Judge Graves, you were on the panel in You can't just come up with new substantive rights. And, in fact, the Court has been saying that for a very long time. In 1993, Judge Wiener, you were on a panel in Oxford Management that said exactly the same thing. And here, what the bankruptcy judge did was she used 105 to create new substantive rights. And I'll offer an analogy for why that's problematic, not only as a matter of the bankruptcy code, but as a matter of the Constitution, because she is, of course, an Article I judge. We know that administrative agencies have authority to implement regulations to give effect to statutes passed by Congress and approved by the President. What they don't have is authority to create new rights beyond the statutes. They fill in the interstices in the statutory rights. They don't create new rights. That's analogous here. 105 allows the bankruptcy judge to fill in the interstices, but there always has to be a hook in the bankruptcy code. And for these provisions, there is no hook. Now, my opponent also tells the Court that in Pacific Lumber, the Court pointed out in Judge Jones' majority opinion that there was no evidence that the releases were necessary because of the danger of extensive litigation. But that doesn't provide a point of distinction here, because, number one, as I've demonstrated, my clients haven't been overly litigious, and they're not controlled by the party that the bankruptcy judge concluded had been overly litigious. Moreover, the Court did not say in Pacific Lumber that if there were evidence of these sorts of provisions. It just noted that they didn't exist there. And, indeed, such a holding would not have been permissible because there is no hook in the bankruptcy code. Finally, let me address briefly the res judicata argument. As I already pointed out, the two 2020 orders, January and July, cannot be res judicata as respects to my clients, because they weren't in the case. And nobody with an identity, nobody who represented my parties, my clients, was in the case at that time. And, secondly, those provisions only exculpate or create a gatekeeping role with respect to certain distinct parties, the independent directors and a few others and Mr. Seery, who was referred to in the briefs. It did not protect all of the parties and entities that the bankruptcy judge ultimately protected in the challenged provisions of the bankruptcy plan. If there are no other questions, I'll reserve my time for rebuttal. Thank you, Counsel. Thank you, Your Honors. Mr. Englert. May it please the Court. My name is Roy Englert, and along with Jeffrey Pomerantz, I represent the debtor Appellee. I plan to present argument as to why the confirmation order was lawful in all challenged respects. Keep your voice up, please. Yes, sir. I plan to present argument as to why the confirmation order was lawful in all challenged respects. Mr. Pomerantz plans to argue why the Court need not reach those issues because the case is equitably moved. Now, I want to pick up where Mr. Fine left off, the question of statutory authority. The bankruptcy court did not rely on Section 105 alone. It cited numerous provisions of the Code, and I want to call the Court's attention particularly to 11 U.S.C. Section 1123B6, which allows a reorganization plan to, quote, include any other appropriate provision not inconsistent with the applicable provisions of this title. Numerous courts have relied on that section, as well as Section 105 and other provisions of Chapter 11, to support exculpation clauses. And the Supreme Court of the United States and the United States Energy Resources, 495 U.S. 545, also relied on what was then 1123B5 but has been renumbered to uphold a provision not otherwise authorized by the Code because it was appropriate and included in a plan of reorganization. That's all it takes to have the statutory hook that Mr. Fine says does not exist. Now, a third-party non-debtor release and an exculpation clause are two different things. This Court has forbidden the former, but this case involves the latter, which this Court has never forbidden and which is commonplace in complex Chapter 11 reorganizations. Many courts have upheld such provisions. A third-party release completely extinguishes prepetition claims against some person or entity that is not a debtor. An exculpation clause, on the other hand, simply sets a standard of care similar to the business judgment rule in corporate law or similar to what this Court in Pacific Lumber called the qualified immunity inferred from 1103C for a creditor's committee. In this case and in many others involving exculpation clauses, suits for gross negligence and willful misconduct are still allowed. Now, you've heard this morning that the funds are concerned about the supposed effect of the plan protections on contract rights and especially on the alleged right to terminate Hyland as manager of the collateralized loan obligations. We've stated on the record in the Bankruptcy Court more than once, and I will repeat on the record here today, none of the plan provisions has any effect on the alleged contractual right, not the injunction, not the exculpation clause, not the gatekeeper provision. I'd like to return to the exculpation clause. With the distinction between forbidden third-party releases and permitted I will turn to two independent reasons why the exculpation clause in this case and the related injunction are proper. The first reason is res judicata, and I'm going to rest on the brief with regard to res judicata. But beyond res judicata, there's just nothing wrong with the very commonplace exculpation clauses in this case. It protects disinterested parties who would never have accepted their positions without such protections, and it protects against litigation that the Bankruptcy Court found, as fact, threatened to overwhelm the estate and the reorganized debtor, which, by the way, has indemnified all the protected parties. The Ninth Circuit's Flick-Seth decision is highly instructive here. The Ninth Circuit's Loewenschus decision, just like this Court-specific Lumber decision, is widely understood as a flat prohibition of third-party releases. And yet the Ninth Circuit upheld an exculpation clause indistinguishable from the one in this case, noting that such clauses are commonplace, regularly upheld throughout the circuits, and not forbidden by 11 U.S.C. Section 524E. Is Flick-Seth your sort of best authority for upholding the exculpation provision here? Do you think that's the best case that we should look to? I think the best case is Judge Becker's opinion for the Third Circuit in In Re PWS, which is quite exhaustive in its discussion of why exculpation clauses are permissible. That's third. But the reason we place emphasis on Flick-Seth, Your Honor, is because there's a seven-to-three circuit split on third-party releases, with the Fifth and the Ninth Circuits being two of the three. And even so, the Ninth Circuit saw that a third-party release and an exculpation clause are two different things, and it upheld the exculpation. Okay, I hear you. And I'm assuming you've got all those cases in your brief on the seven-three circuit split on that point. Why, then, did the Ninth Circuit drop a footnote in Flick-Seth and say, we've taken the opposite position of the Fifth Circuit in Pacific Lumber? I think it misread Pacific Lumber. Okay. Do you think that footnote is just a mistake? I think it's a mistake by the Ninth Circuit. Yeah, right. And if you look at Pacific Lumber itself, the discussion, as the amicus brief points out, was on the eighth of eight issues raised by the appellant in that case. And it's a little sloppy. It's not a lot sloppy. I'm not trying to question the core holdings of Pacific Lumber. We're fine with those. But it's a little sloppy in not distinguishing third-party releases, which is what the court did have before, and exculpation clauses. So I think the Ninth Circuit misread this court's precedent, and I think Judge Jernigan correctly read this court's precedent. Okay. Now, the reorganization plan in this case also involves a gatekeeper provision, requiring parties to go to the bankruptcy court and requiring that court to determine whether a claim is colorable before specified categories of litigation can be commenced. That protection is modeled on the Supreme Court's 1881 Barton decision, and it's been reaffirmed under the modern code in every circuit, including this one, that these gatekeeper provisions are okay. Particularly instructive from this court is the decision in Villegas v. Schmidt, cited in the briefs. This court reaffirmed the continued viability of the Barton doctrine and rejected the very argument you heard from Mr. Fine this morning, which is that it improperly gives the bankruptcy court the authority to shut down cases over which it could not enter final judgment. There is an argument. You didn't hear it in an oral argument this morning, but there's an argument in the briefs that Section 959A of the Judicial Code somehow precludes Barton protection. It is an exception to Barton. It doesn't override the Barton doctrine. It's been on the books in some form since 1887 and in its current form since 1948. It makes gatekeeper provisions inapplicable to activities that constitute running an ongoing business, as opposed to carrying out a plan of reorganization. But every court has reaffirmed the Barton doctrine, even with 959A on the books. Before I leave the plan protections, let me address a couple of arguments made on the other side. One is an assertion that the facts of this case don't justify the protections. The bankruptcy court made not just findings of fact, but extensive findings of fact, including a finding that Mr. Dondero is trying to be obstructionist and burn the place down, and not clearly erroneous findings that he controls the other appellants. Footnote 13 of our brief cites several admissions by the other side about Mr. Dondero's control over the advisers in the funds. If I understood Mr. Fine correctly today, he said, well, he just controls their investment decisions, not their litigation. That's a distinction without a difference, especially in the case of Mr. Dondero. Litigation is how Mr. Dondero operates. What led to this bankruptcy in the first place is Mr. Dondero's repeated litigation all over the place. Appellants also argue that the provision in this case could be imposed only as a sanction for vexatious litigation. But that is not the primary basis on which the court below imposed these commonplace protections. Now, it did find vexatious litigation, but it relied on its powers under the code, not its inherent power to sanction. And, again, to be clear, those powers include Section 1123b-6. A plan of reorganization can include any other appropriate provision not inconsistent with the applicable provision of this title. I'd like to address very briefly the other issues in this case. The appellants are not intending to raise their argument under the absolute priority rule, but in any event, the plan doesn't violate the absolute priority rule for the simple reason that the lower classes won't receive any distributions unless and until higher classes are paid in full. As the Bankruptcy Court for the Western District of Texas observed in the Intergent Therapeutics case, it's simply common sense that when the contingency is they don't get paid unless the prior classes have been paid in full. It doesn't violate the rule that you can't get paid until prior classes have been paid in full. As to the Rule 2015.3 issue, the operating protocols established as part of the governance settlement serve the same disclosure purpose. And again, Judge Becker's opinion for the Third Circuit and the PWS case is instructive. As long as no one is deprived of information that would have led that party to take a different course of action, there's no reason to reverse on a technicality. Appellants never say they would have done anything differently or identify a single piece of information they didn't have. There's also an argument that the debtor is not entitled to a discharge, but 11 U.S.C. 1141 D.3 states a three-part conjunctive test for disallowing a discharge, and 3B is the debtor does not engage in business after confirmation of the plan. Two to three years of continued operations are contemplated here. I'd be happy to answer more questions from the Court, but otherwise I'll yield the lectern to Mr. Pomerantz to discuss that further. Thank you, Counsel. Good morning, Your Honors. May it please the Court. The appeal is equitably moot because any appellate relief that the Court could order would affect parties not before the Court and the plan's success. This was a plan that was supported by 99.8 percent of the dollar amount of allowed claims in this case and which the Bank of New York Court called a miracle and which put an end to Highland's decade-long litigation culture. We recognize that this Court applies equitable mootness with a scalpel rather than an axe. However, the plan protections are not severable from this carefully constructed plan. There is no fraction of relief that the Court could order that would not destroy the plan and would affect parties not before the Court. Invalidating these plan protections would put the debtor right back into bankruptcy. Appellants argue that as a matter of law, in this case, these plan protections can't be equitably moot under Pacific Lumber, but Pacific Lumber did not create such a per se rule. Equitable mootness always involves an intense factual inquiry on the thought, and what distinguishes this case is the uncontroverted and overwhelming evidence developed in the Bankruptcy Court demonstrating that such fractional relief would undermine the plan and affect parties not before the Court. The Bankruptcy Court found that the plan protections were integral elements of and inextricably intertwined with other provisions of the plan. They were necessary to maximize credit recoveries as quickly as possible, and was not distracted with costly, time-consuming, and frivolous litigation. The confirmation order details the appellants and their affiliates' intimidation and harassment of the debtor and of the independent managers following Mr. Dandera's threat to burn the place down, which followed nonacceptance of his planned proposal. Counsel, let's just say, hypothetically speaking, I agreed with your friend on how these exculpated parties must be struck, and that would be the remedy under Pacific Lumber. Explain to me why doing so would run afoul of the equitable mootness doctrine. Okay. So we have to demonstrate to your honors that either it would undermine the plan's success or it would affect parties not before the Court. And here I think we can prove both. This debtor entered bankruptcy because of the crushing litigation. It crumbled this debtor in the 10 years before. This litigation continued during the case. And the Court recognized that confirmation that provisions had to be put in place in the plan to make sure the litigation wouldn't crush the debtor post reorganization. The Court found that these provisions were necessary to do so. It found that if there was a Chapter 7, which this case would end up in, that there would be tens of millions of dollars lost. These are extraordinary assets. This is not a simple company to unwind. This is a complex financial services company. It includes structured investments. It includes undeveloped land. It includes distressed debt. Misdemeanor, the Court found, was critical to that. If these plan managers are not in place, the company is going to crumble. So that's how we satisfy the plan's success aspect of it. And with respect to the other aspect in terms of parties' reliance, the plan protections would affect real people. These are people who are appointed by the Bankruptcy Court in lieu of a trustee to oversee the debtor and to implement the plan. The independent directors were strangers with no prior involvement to Highland prior to their appointment. The post-effective date managers include two additional strangers who only agreed to serve because of the protections that were put in place to allow them to become fiduciaries in such contentious circumstances. Excising the plan protections now seven months after the effective date would pull out the rug from under them, would expose them to litigation without the ability to have the plan protections, and allow appellants to attack decisions in the plan. Thank you. My last question is, can you identify a case, either from our court or from your office, with respect to a potential problem under 524E for exculpating a Pacific Lumber problem? I don't think so. I don't think I can identify that for your Honor. But again, this is not like the Pacific Lumber case, where it said not equitably moot. Because there it said that it was a gratuitous release, and it wasn't tethered to success of the plan. Reading the confirmation order will lead your Honors to conclude the complete opposite, which again, in an equitable mootness argument, is a factual intensive inquiry. Thank you. Thank you, Your Honor. Thank you, Counsel. Rebuttal. Your Honors, if I may begin with the equitable mootness argument that Mr. Pomerantz made, it would be a stronger argument if this Court hadn't decided Pacific Lumber. Because Pacific Lumber looked at a provision just like this, an argument just like this, and it did what this Court has said must be done with equitable mootness arguments, used a scalpel rather than an axe. My opponent would like to use an axe. But that runs counter to what happened in Pacific Lumber. The Court there said that there would be no problem with the Court reviewing and ultimately vacating, striking, exculpation provisions, release provisions, and gatekeeping provisions. That case is the strongest case for why equitable mootness does not apply in this setting. And indeed, while Mr. Pomerantz says, well, it would crush the entire plan, the problem is that that flies in the face of Pacific Lumber. Mr. Englert, Counsel on the other side, in fact, argued Pacific Lumber on the other side of that. He argued, in fact, that those provisions could be excised. And that's exactly what the Court did. And that's what we're asking the Court to do here. The funds are not asking the Court to strike down the entire bankruptcy plan. The funds are asking that these provisions, which are ultra-virus and in some senses unconstitutional, simply be excised in the same sense that it did so in Pacific Lumber. Now, my opponent argues that it's equitably moot because of litigiousness. But, of course, that becomes a circular argument. The provisions are justified because of litigiousness. By the way, not litigiousness of my clients, but perceived litigiousness of someone else. And this Court can't review those provisions because of litigiousness. It's a circular argument that would avoid any appellate review of such a provision. And that cannot simply be the case. Now, the final point that I'll note for purposes of equitable mootness, in case you have any questions your Honors might have, is to come back to the question Judge Duncan asked of Mr. Pomerantz. Can you point to any case where this Court, or I think you said any Court, has found something equitably moot when it makes the sort of challenges that the funds have made here? And Mr. Pomerantz candidly acknowledged no. And I would go further and say he's not only right, but there's the counter, and that's Pacific Lumber. I don't mean to interrupt you, but I want to make sure you get to a couple points. Counsel on the other side, and I'll probably get this wrong, but sought to justify the gatekeeper provision by reference to our decision in Villegas. If that question makes any sense, and maybe it doesn't, it has to do with the Barton Doctrine. Could you respond to that point? I would be happy to do that, Your Honor. The Barton Doctrine, and he's right, it's a 19th century thing, and 19th century things, when they support you, are well-established authority, and when they don't, are antiquated authority. And I'm not going to make the argument about whether it's one or the other, but it is limited. It was originally in the context of receivers. It's then been extended to cover bankruptcy trustees. It has never been extended as broadly as would have to be for it to apply in this case to protect all of the folks who are benefiting from the gatekeeping injunction that the bankruptcy judge put in place. If I might turn to a few other points that Mr. Englert made in his argument, first of all, he says, well, there are a lot of other provisions that might justify these provisions. They don't by their text, but since I don't have time to go through them, I'll come back to Pacific Lumber, which looked at all of these things and said, there's no hook in the bankruptcy code for these things. Okay, so let me just ask you one. It seems like a larger point that Mr. Englert made was a distinction between an exculpation clause, and this was his way of dealing with Blixeth, and the footnote in Blixeth about Pacific Lumber also referenced an opinion in Ray PWS by Judge Becker. Do you have a general response to that? I know you have. If Your Honor lets me go ahead, I will. You're at 41 seconds. Let me see if I can fit it in, see how I do. Your Honor, the answer is that it's a distinction without a difference. First, Pacific Lumber also talked about exculpations. And secondly, the same reasons that forbid nonconsensual third-party releases forbid nonconsensual third-party exculpations. And by the way, an exculpation is in some sense a form of a release, because, for example, it releases claims for negligence. It releases claims that don't rise to a certain level of scientry. So it is, in fact, a form of a release. Your Honors, unless you have additional questions, which, of course, I'd be very pleased to respond to, we will simply ask, again, on behalf of the funds, that the Court reverse those parts of the plan that implemented the exculpation provisions and the gatekeeping injunction by striking those provisions. And, Your Honors, I thank the Court for its time. Thank you, Counsel. The Court will take this matter under advisement.